IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOWARD A. MICHEL,

                Plaintiff,                Case No. 3:06 CV 1431

  -vs-

                                             MEMORANDUM OPINION

AMERICAN FAMILY LIFE
ASSURANCE COMPANY,

                Defendant.

KATZ, J.

**I. Background**

Plaintiff Howard Michel ("Plaintiff" or "Michel") brought this action against Defendant American Family Life Assurance Company of Columbus ("Aflac") for breach of contract, bad faith, and emotional distress related to Aflac's denial of a claim Michel submitted under Convalescent Care Policy No. A1722978 ("the Policy"). Michel filed this suit on May 9, 2006 in the Lucas County Court of Common Pleas. The case was removed to this Court on June 9, 2006. The matter is now before the Court on Defendant's motion for summary judgment (Doc. 19) and Plaintiff's opposition and motion for summary judgment (Doc. 20). This Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441.

**II. Facts**

The Policy provides coverage "[i]f, within 30 days following your discharge from a hospital confinement of at least 3 consecutive days, you require skilled, intermediate or custodial care in a Skilled or Intermediate Nursing Facility." The Policy defines "Skilled or Intermediate Nursing Facility" as "[a] Facility which is licensed as such by the state in which it is located."

Michel was hospitalized from August 1, 2005 to August 4, 2005 after he fell and suffered a head injury. On August 10, 2005, Michel was admitted to the Lutheran Home at Toledo Assisted Living in Toledo, Ohio (the "Lutheran Home").

On August 23, 2005, Michel's daughter, Gretchen Oberdick, submitted a claim to Aflac under the Policy for the care Michel was receiving at the Lutheran Home. Part three of the claim form submitted by Oberdick was filled out by the Lutheran Home and indicated that the Lutheran Home was licensed to provide residential and assisted living care and that Michel was in assisted living at the Lutheran Home. On August 25, 2005, Aflac denied the claim, because the Lutheran Home was not a "Skilled or Intermediate Nursing Facility" as required in the Policy.

On August 30, 2005, Oberdick called Aflac to contest the denial and was advised that the Lutheran Home did not have "skilled or intermediate" checked on the claim form. On September 8, 2005, the Lutheran Home submitted a new claim form which indicated that the Lutheran Home was licensed to provide residential and assisted living care and that Michel was in assisted living at the Lutheran Home, as well as skilled nursing and intermediate nursing. On September 15, 2005, Oberdick submitted another new claim form which indicated that the Lutheran Home was licensed to provide residential, skilled, intermediate, and assisted living care and that Michel was in assisted living at the Lutheran Home.

On September 16, 2005, the claim was sent to Aflac's Research and Resolution Team for review. The Research and Resolution Team returned the claim to the original claims specialist to verify the licensing, the type of facility, and level of care. On September 26, 2005, the claims specialist verified that the insured was in assisted living at the Lutheran Home and that the denial was correct. She then sent the claim back to the Research and Resolution Team. On October 7,

2

2005, Oberdick called Aflac and was advised that the claims specialist had verified the type of facility and that the denial was correct. Oberdick stated that she chose the Lutheran Home based on information she received when she called Aflac's customer call center on August 3, 2005. On August 3, 2005, a customer call center employee incorrectly told Oberdick that intermediate living was considered assisted living.

As a result of the October 7, 2005 phone call and the misinformation given to Oberdick on August 3, 2005, Aflac issued a Customer Inquiry Memo requesting another review of the claim on October 10, 2005. Aflac submitted the claim for review by the Claims Review Committee by preparing a CRC Review File memorandum on October 11, 2005. The Claims Review Committee reviewed the claim on October 13, 2005 and decided to make an exception and pay the claim through December 31, 2005 to allow Michel time to move to a covered facility. Aflac informed Michel of this decision by letter dated October 13, 2005:

> The documentation provided by Lutheran Home at Toledo indicates that you are confined to their Assisted Living Facility and therefore, benefits would not be due according to the guidelines set forth within your policy contract. However, we have agreed to make an exception to provide benefits for your confinement to Lutheran Home at Toledo's Assisted Living Facility through December 31, 2005 as long as you remain confined and all other policy criteria are met. As of January 01, 2006, no benefits will be payable for your confinement to this facility. If you move from this facility to a Skilled or Intermediate Nursing Facility and you still require skilled, intermediate, or custodial care as outlined within your policy provisions, we will review for further benefits.

After receiving this notice, Michel remained in the Lutheran Home.

### III. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

3

of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the

judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**IV. Discussion**

The Policy provides coverage for care at a "Skilled or Intermediate Nursing Facility." Ohio licenses certain facilities as "nursing homes" and others as "residential care facilities." Under Ohio law, a "nursing home" is "a home used for the reception and care of individuals who by reason of illness or physical or mental impairment require skilled nursing care and of individuals who require personal care services but not skilled nursing care." O.R.C. § 3721.01(A)(6). A "residential care facility" is

> a home that provides either of the following:
> (a) Accommodations for seventeen or more unrelated individuals and supervision and personal care services for three or more of those individuals who are dependent on the services of others by reason of age or physical or mental impairment;
> (b) Accommodations for three or more unrelated individuals, supervision and personal care services for at least three of those individuals who are dependent on the services of others by reason of age or physical or mental impairment, and, to at least one of those individuals, any of the skilled nursing care authorized by section 3721.011 of the Revised Code.

5

O.R.C. § 3721.01(A)(7). Ohio defines "accommodations" as "housing, meals, laundry, housekeeping transportation, social or recreational activities, maintenance, security, or similar services that are not personal care services or skilled nursing care." Ohio Admin. Code § 3701-17-50(A).

Michel sought treatment at the Lutheran Home. The Lutheran Home is licensed in Ohio as a residential care facility. It is not licensed as a nursing home. Therefore, on the face of the Policy, the Lutheran Home is not covered by the Policy.

Michel argues that an ambiguity exists in the Policy; because Ohio does not license any facilities as "Skilled or Intermediate Nursing Facilities," no facility can be licensed "as such" as required by the Policy. Therefore, Michel argues, the focus should be on the services provided by the facility rather than the type of license issued by the state.

For Michel's argument to be successful this Court would have to first agree that the language is ambiguous, which in essence would require a finding that the words "as such" in the Policy language refer to the label "Skilled or Intermediate Nursing Facility." If so, only then can this Court consider that there may be an ambiguity in the Policy language because Ohio does not license "Skilled or Intermediate Nursing Facilities," even though the state does license "nursing homes." If, on the other hand, this Court is of the opinion that the words "as such" constitute a clear reference to facilities licensed by the state as "nursing homes," then there is no ambiguity and the plain language of the contract controls.

Ohio law explicitly provides that facilities licensed as nursing homes are those whose primary services to injured or ill individuals are skilled nursing services. Residential care facilities provide an array of services, and those services include, to a small degree, skilled nursing

6

care on a limited basis and only complementary to the facilities' main purpose of "accommodation," which explicitly excludes skilled nursing care.

The Policy refers to *skilled nursing facilities*.  In the first instance, the similarity of the phrases "nursing home" and "nursing facilities" should be given due weight with regard to a correlation between the type of facilities addressed in the statute and the Policy.  Further, the clear intent of the parties is apparent: that the Policy would cover "nursing homes," the primary service of which for injured people is skilled nursing care, and that it would not cover residential care facilities, the primary purpose of which is "accommodation" activities that do not include skilled care.

Nursing homes and residential care facilities may sometimes overlap in that they both may offer skilled care services.  But drawing the line this Court draws today gives weight to the state's distinction between "nursing homes" and "residential care facilities."  Further, when the parties entered into the contract, it should have been clear that state-licensed nursing homes would be covered because their primary purpose with regard to injured individuals is to provide skilled care, while other facilities whose purpose was to provide accommodation and only provide skilled care on a restricted basis, would not be.  When entering a contract, it is important that the parties be aware of which facilities will be covered and which will not be, and it would be over-reaching by this Court to rewrite the Policy to include facilities that it was not contemplated to include when it was entered into.  Because Plaintiff is unable to show that Lutheran Care, a registered "residential care facility," and not a registered "nursing home," should be grouped in with "Skilled or Intermediate Nursing Facilities" as described by the plain language of the Policy, Plaintiff is not entitled to summary judgment, while Defendant clearly is.

Plaintiff's case is certainly not helped by the fact that Defendant seemed to go out of its way to give notice of the discrepancy and an opportunity to correct the situation. After one of Aflac's employees gave the Plaintiff's daughter mistaken information, Aflac reviewed the decision, recognized its error, and offered to cover the costs at Lutheran Home anyway, provided that Michel moved into a covered nursing facility within a reasonable time frame. Plaintiff neither relocated to a covered facility, nor does he here offer a reason for not doing so. As such, Plaintiff has not shown facts that establish intentional maltreatment of himself by Defendant. In failing to do so, Plaintiff cannot meet the burden for summary judgment on either his bad faith or his emotional distress claim.

**V. Conclusion**

For the reasons described herein, Plaintiff's motion for summary judgment (Doc. 20) is hereby denied, and Defendant's motion for summary judgment (Doc. 19) is hereby granted.

IT IS SO ORDERED.

                                           s/ *David A. Katz*
                                           DAVID A. KATZ
                                           U. S. DISTRICT JUDGE